UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| | |
|---|---|
| In re: ) | |
| ) | |
| CORBIN PARK, L.P., ) | Case No. 10-20014 |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| ) | |
| BANK OF AMERICA, N.A. ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | |
| ) | |
| CORBIN PARK, L.P. ) | |
| ) | |
| Respondent. ) | |

**EMERGENCY MOTION FOR RELIEF FROM AUTOMATIC STAY
OR IN THE ALTERNATIVE TO WINTERIZE DEBTOR'S REAL PROPERTY
AND TO RECEIVE A PRIORITY CLAIM AND LIEN PURSUANT TO
11 U.S.C. § 364(c)(1) AND (d)(1)**

COMES NOW Bank of America, N.A. as administrative agent (the "Agent") for Bank of America, N.A., U.S. Bank N.A., TierOne Bank, Regions Bank, and Compass Bank (collectively, the "Lenders), pursuant to 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001(a) and 9014, and for its Emergency Motion for Relief From Automatic Stay, or in the Alternative to Winterize Debtor's Real Property and to Receive a Priority Claim and Lien Pursuant To 11 U.S.C. § 364(c)(1) and (d)(1) (the "Motion"), states as follows:

**Jurisdiction and Venue**

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(G) and a contested matter under Federal Rules of Bankruptcy Procedure 4001 and 9014.

1589805.03

2. Venue of this proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**Facts**

3. On January 5, 2010 (the "Petition Date"), Corbin Park, L.P., a Delaware limited liability partnership (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

4. Debtor is the owner of an approximately 97 acre real estate project located at 135th Street and Metcalf Avenue in Overland Park, Kansas known as "Corbin Park." From October, 2008, Debtor has taken steps to develop Corbin Park as a one and two-story regional shopping center anchored by, among other stores, Von Maur, and JC Penney.

5. On information and belief, Debtor's bankruptcy case is a single asset real estate case as defined in 11 U.S.C. §101(51B). Agent has filed a Motion for Declaration of Single Asset Real Estate Case on or about the same time as the instant Motion.

6. In order to develop Corbin Park, Debtor and Agent, as administrative agent and a lender, together with the other Lenders, entered into the following agreements (collectively, together with all other agreements executed in conjunction therewith, the "Loan Documents"):

   a. Construction Loan Agreement dated as of October 7, 2008, as amended by that certain First Amendment to Construction Loan Agreement dated as of January 5, 2009, and by that certain Second Amendment to Construction Loan Agreement dated as of April 7, 2009 (collectively, the "Loan Agreement"). A true and accurate copy of the Loan Agreement is attached hereto and incorporated herein by reference as Exhibit A;

   b. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Bank of America, N.A. (the "Bank of America Note"). A true and accurate copy of the Bank of America Note is attached hereto and incorporated herein by reference as Exhibit B;

c. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of U.S. Bank National Association (the "U.S. Bank Note"). A true and accurate copy of the U.S. Bank Note is attached hereto and incorporated herein by reference as <u>Exhibit C</u>;

d. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of TierOne Bank (the "TierOne Note"). A true and accurate copy of the TierOne Note is attached hereto and incorporated herein by reference as <u>Exhibit D</u>;

e. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Regions Bank (the "Regions Note"). A true and accurate copy of the Regions Note is attached hereto and incorporated herein by reference as <u>Exhibit E</u>.; and

f. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Compass Bank (the "Compass Note"). A true and accurate copy of the Compass Note is attached hereto and incorporated herein by reference as <u>Exhibit F</u>, (the Bank of America Note, the U.S. Bank Note, the TierOne Note, the Compass Note, and the Regions Note are collectively referred to herein as the "Notes").

7. To secure Debtor's obligations under the Notes and the Loan Agreement, Debtor executed and delivered to Agent the following agreements:

a. Future Advance Mortgage, Assignment of Rents and Leases and Security Agreement dated October 7, 2008 in the principal amount of One Hundred Seven Million Four Hundred Thousand and 00/100s Dollars ($107,400,000.00) (the "<u>Mortgage</u>"), granting Bank of America, as administrative agent, a first mortgage in the property comprising Corbin Park, as more particularly described in the Mortgage (the "<u>Property</u>"). A true and accurate copy of the Mortgage is attached hereto and incorporated herein by reference as <u>Exhibit G</u>;

b. Collateral Assignment of Development Agreement and Related Rights dated October 7, 2008. A true and accurate copy of the Collateral Assignment of Development Agreement and Related Rights is attached hereto and incorporated herein by reference as <u>Exhibit H</u>;

c. Assignment of Management and Leasing Contracts and Subordination of Fees dated October 7, 2008. A true and accurate copy of the Assignment of Management and Leasing Contracts and

3

Subordination of Fees is attached hereto and incorporated herein by reference as <u>Exhibit I</u>; and

  d. Assignment of Construction Agreement dated October 7, 2008. A true and accurate copy of the Assignment of Construction Agreement is attached hereto and incorporated herein by reference as <u>Exhibit J</u>.

8. Debtor is in default under the Notes, the Loan Agreement and Mortgage as evidenced by:

  a. that certain Notice of Default Letter dated July 21, 2009 sent by Agent to Debtor ("Default Letter 1"). A true and accurate copy of Default Letter 1 is attached hereto and incorporated herein by reference as <u>Exhibit K</u>;

  b. that certain Notice of Default Letter dated July 24, 2009 sent by Agent to Debtor ("Default Letter 2"). A true and accurate copy of Default Letter 2 is attached hereto and incorporated herein by reference as <u>Exhibit L</u>; and

  c. that certain Notice of Default Letter dated December 28, 2009 sent by Agent to Debtor ("Default Letter 3"). A true and accurate copy of Default Letter 3 is attached hereto and incorporated herein by reference as <u>Exhibit M</u>.

9. Agent and Debtor entered into that certain ISDA Master Service and Credit Agreement Annex dated as of February 21, 2009 (the "SWAP"). A true and accurate copy of the SWAP is attached hereto and incorporated herein by reference as <u>Exhibit N</u>.

10. Debtor is in default under the SWAP and the SWAP has been terminated as indicated by that certain Default letter dated July 30, 2009, Notice of Payment Default letter dated October 23, 2009, Designation of Early Termination Date letter dated October 28, 2009 and Notice of Amounts Payable letter dated November 2, 2009. True and accurate copies of the July 30, 2009 Default Letter, the October 23, 2009 Payment Default Letter, the October 28, 2009 Designation of Early Termination Letter and the November 2, 2009 Notice of Amounts Payable

Letter are attached hereto and incorporated herein by reference, respectively, as <u>Exhibits O, P, Q, and R</u>.

11. Debtor's obligations under the SWAP constitute obligations under the Loan Documents that are secured by the Mortgage.

12. Pursuant to 11 U.S.C. § 552(b), Lenders' secured claim extends to the proceeds, products, offspring, rents and profits acquired by Debtor and its bankruptcy estate after the Petition Date ("Proceeds of the Collateral").

13. From July 21, 2009 through the Petition Date, Debtor, Agent and Lenders engaged in a protracted series of negotiations to avoid foreclosure proceedings and cure defaults under the Loan Documents. During this period, Debtor ceased construction and development of the Property, and has not as of the date of this Motion winterized the Property.

14. The Mortgage provides that, upon a default, Agent shall have a number of additional rights and remedies, including the right to appoint a Receiver for the Property as well as collect and or sue for Rents in Agent's own name, to require Debtor to transfer all security deposits and records thereof to Agent, and to enter into and take possession of the Property and to make all such repairs, replacements, alterations, additional or improvements to the Property as Agent may deem proper at the expense of Debtor. <u>See Exhibit G</u>, Mortgage, at § 5.1 (b), (c) and (g).

15. The Loan Agreement also provides that, upon a default, Agent shall have, *inter alia*, a number of additional rights and remedies, including declaring all indebtedness immediately due and payable, reducing any claim to judgment, and obtaining appointment of a receiver and/or judicial or nonjudicial foreclosure under the Mortgage. <u>See Exhibit A</u>, Loan Agreement, at § 4.2(a).

16. In Default Letter 3, Agent notified Debtor of its intention to commence proceedings for judicial foreclosure and for the appointment of a receiver, as permitted under the Loan Documents and the Mortgage.  See Exhibit M, Default Letter.

17. Debtor filed its Chapter 11 Bankruptcy case as counsel for Agent was driving to the courthouse to file its Petition to Foreclose Mortgage, Suit on Promissory Notes and SWAP, and Suits on Guaranties, and its Verified Application for Appointment of Receiver.

18. As of December 23, 2009, there is due and owing under the Notes the aggregate principal amount of $22,563,761.42, together with aggregate accrued interest of $933,913.20.

19. As of November 2, 2009, there is due and owing under the SWAP the principal amount of $2,070,943.26 together with accrued interest.

20. Prior to the Petition Date, Debtor stopped paying contractors for the Property, and as a result mechanics liens in the amount of $26,765,580.82 have been filed against the Property under Kansas law (the "Mechanics Liens").

21. As of the Petition Date, Debtor has not resumed construction and development of the Property, which is partially complete, and has failed to properly winterize the Property. The value of the Property thus remains subject to further diminution because of the winter elements.

22. Debtor enjoys no equity in the Property.

## Request for Relief from Automatic Stay

23. Under §362(a)(3) of the Bankruptcy Code, Debtor's petition acts as an automatic stay of any act to exercise control over property of Debtor's estate, including the appointment of a Receiver for the Property and the foreclosure of the Property by Lenders.

24. Pursuant to §362(d)(2) of the Bankruptcy Code, the Court shall grant relief from stay if Debtor does not have equity in the collateral and the collateral is not necessary for an

effective reorganization. *See, e.g.*, *In re Cablehouse, Ltd.*, 68 B.R. 309, 312 (Bankr. S.D. Ohio 1986) (secured creditor of Chapter 11 debtor is entitled to relief from stay where debtor has no equity in real property and where there is no reasonable possibility of successful reorganization as evidenced by fact that substantial additional capital is needed to complete real property construction).

25. Pursuant to §362(d)(2), there is no equity in the Property.

26. The Property is not necessary for Debtor's reorganization because Debtor has no ability to reorganize. The Property is worth less than the debt secured by it.

27. Pursuant to §362(d)(1), the automatic stay may be lifted for cause.

28. Cause exists pursuant to §362(d)(1) to lift the automatic stay with respect to the Collateral and the Proceeds of the Collateral due to Debtor's failure and protect the Property by completing the winterization of the Property. Cause also exists due to Debtor's inability to provide adequate protection to Lenders. Lack of adequate protection alone is sufficient cause to terminate the stay with respect to the Property. *See, e.g., In re Augustus Court Associates*, 46 B.R. 619, 620 n.3 (Bankr. E.D. Pa. 1985) (a "debtor's lack of equity in a parcel of secured realty is a prima facie basis for relief under §362(d)(1) due to an ostensible lack of adequate protection"); *In re Kane*, 27 B.R. 902, 904 (Bankr. D. Kan 1983) (a creditor's substantiated averments on the basis of no equity or insufficient equity in the debtor's property are sufficient for relief under §362(d)(1)).

29. Lenders seek relief from the automatic stay to pursue their rights under the Loan Documents, the Mortgage, and Kansas law.

30. **In the alternative**, if the Court does not want to grant relief from stay on an emergency basis as to the Property, then the court should permit Lenders to winterize the

Property in accordance with Kansas law and the express terms of the Mortgage and the Loan Documents in order to preserve and protect the Property.

31. To winterize the Property, Lenders believe that the estate will incur costs of approximately $700,000 to $850,000. Specifically, Lenders seek to employ a third party construction company who was familiar with the Property prior to the Petition Date.

32. Copaken, White & Blitt, L.L.C. ("CWB") has agreed to complete the winterization of the Property for the greater of (a) $10,000 or (b) ten percent (10%) of the aggregate amount of invoices of third-party vendors required to winterize the Property. The estimated cost of preserving and winterizing the Property is between $700,000 to $850,000, thus CWB's fee could be as high as $85,000.00.

33. CWB is a family-owned commercial real estate development firm based in Kansas City, Missouri that currently manages 3.8 million square feet of retail and office space. CWB has had a presence in Kansas City since 1922, has decades of experience managing a diverse portfolio of real estate projects, and understands the steps necessary to winterize the Property.

34. Because Debtor's bankruptcy petition acts as an automatic stay of any act to exercise control over property of Debtor's estate, including any act of Lenders to take control of and winterize the Property, Lenders seek relief from the automatic stay to pursue their rights under the Loan Documents to winterize the Property and preserve Debtor's collateral for the benefit of all creditors.

### Request for Priority Lien and Claim

35. Lenders request authority to apply all charges incurred in the winterization and preservation of the Property to Debtor as a protective advance, as permitted by the Loan

8

Case 10-20014    Doc# 17    Filed 01/13/10    Page 8 of 10

Documents (each, a "Protective Advance").  Because each Protective Advance will inure to the benefit of Debtor and all other creditors, Lenders seek a declaration from the Court that Lenders will receive a secured claim on the Property with priority superior to all other claims and liens of any kind and of any other claimant in Debtor's bankruptcy estate, including the Mechanics Lien claimants, to the extent of all such Protective Advances made by Lenders as allowed under 11 U.S.C. § 364(c)(1) and (d)(1).

WHEREFORE, Lenders respectfully request that this Court enter its Order terminating the automatic stay, or in the alternative, granting relief from the automatic stay to allow Lenders to retain Copaken, White & Blitt, L.L.C. to preserve and winterize the Property and declaring that Lenders will receive a superpriority administrative and secured claim in the Property with priority superior to all other claims and liens of any other claimant in Debtor's bankruptcy estate, including the Mechanics Lien claimants, to the extent of any Protective Advances made by Lenders to preserve and winterize the Property, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  January 13, 2010          **LEWIS, RICE & FINGERSH, L.C.**

By:     /s/ Scott A. Wissel
          Scott A. Wissel, Esq., KS Bar No. 18589
          1010 Walnut, Suite 500
          Kansas City, MO  64106
          Telephone:  816-421-2500
          Facsimile:  816-472-2500
          E-Mail:  sawissel@lrf-kc.com

And

**LEWIS, RICE & FINGERSH, L.C.**

Joseph J. Trad
Larry E. Parres
500 North Broadway, Suite 2000
St. Louis, MO  63102
Telephone:  314-444-7600
Facsimile:  314-612-7691
E-Mail:  jtrad@lewisrice.com

*COUNSEL TO BANK OF AMERICA, N.A.*

### CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing Emergency Motion for Relief From Automatic Stay to Winterize Debtor's Real Property and to Receive a Priority Claim and Lien Pursuant To 11 U.S.C. § 364(c)(1) and (d)(1) was served on the parties receiving electronic notices in the above-captioned proceedings through the Court's CM/ECF System, this 13th day of January 2010.


          /s/ Scott A. Wissel