UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

In re: )
) Case No. 10-20014
CORBIN PARK, L.P., ) Chapter 11
) Hearing Date: July 21, 2011
Debtor. ) Hearing Time: 1:30 p.m.

## JOINT MOTION OF DEBTOR AND BANK OF AMERICA FOR (I) APPROVAL OF (a) FORM OF PURCHASE AGREEMENT; (b) BID PROCEDURES, AND (c) FORM AND MANNER OF NOTICE, AND (II) FOR SCHEDULE OF AUCTION DATE

COMES NOW Corbin Park, L.P. and Bank of America, N.A., as administrative agent (the "Agent") for Bank of America, N.A., U.S. Bank N.A., TierOne Bank, Regions Bank, and Compass Bank (collectively, the "Lenders") and for its Joint Motion for (I) Approval of (a) Form of Purchase Agreement, (b) Bid Procedures, and (c) Form and Manner of Notice, and (II) for Schedule of Auction Date ("Sale Motion"), respectfully states as follows:

### BACKGROUND

1. On January 5, 2010 (the "Petition Date"), Corbin Park, L.P., a Delaware limited liability partnership (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. Debtor is the owner of an approximately 97 acre real estate project located at 135th Street and Metcalf Avenue in Overland Park, Kansas known as "Corbin Park" (the "Property"). From October, 2008, Debtor has taken steps to develop Corbin Park as a one and two-story regional shopping center anchored by, among other stores, Von Maur, and JC Penney.

3. In order to develop Corbin Park, Debtor and Agent, as administrative agent and a lender, together with the other Lenders, entered into the following agreements (collectively, together with all other agreements executed in conjunction therewith, the "Loan Documents",

copies of which were attached to Agent's Emergency Motion for Relief from Stay filed with the Court on January 13, 2010 [Docket #17]):

    a.     Construction Loan Agreement dated as of October 7, 2008, as amended by that certain First Amendment to Construction Loan Agreement dated as of January 5, 2009, and by that certain Second Amendment to Construction Loan Agreement dated as of April 7, 2009 (collectively, the "Loan Agreement");

    b.     Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Bank of America, N.A. (the "Bank of America Note");

    c.     Promissory Note dated October 7, 2008 executed by Debtor payable to the order of U.S. Bank National Association (the "U.S. Bank Note");

    d.     Promissory Note dated October 7, 2008 executed by Debtor payable to the order of TierOne Bank (the "TierOne Note");

    e.     Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Regions Bank (the "Regions Note"); and

    f.     Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Compass Bank (the "Compass Note"). (The Bank of America Note, the U.S. Bank Note, the TierOne Note, the Compass Note, and the Regions Note are collectively referred to herein as the "Notes").

4.     To secure Debtor's obligations under the Notes and the Loan Agreement, Debtor executed and delivered to Agent the following agreements:

    a.     Future Advance Mortgage, Assignment of Rents and Leases and Security Agreement dated October 7, 2008 in the principal amount of One Hundred Seven Million Four Hundred Thousand and 00/100s Dollars ($107,400,000.00) (the "Mortgage"), granting Bank of America, as administrative agent, a first mortgage in the property comprising Corbin Park, as more particularly described in the Mortgage;

    b.     Collateral Assignment of Development Agreement and Related Rights dated October 7, 2008;

    c.     Assignment of Management and Leasing Contracts and Subordination of Fees dated October 7, 2008; and

    d.     Assignment of Construction Agreement dated October 7, 2008.

5. Debtor is in default under the Notes, the Loan Agreement and Mortgage as evidenced by:

    a. that certain Notice of Default Letter dated July 21, 2009 sent by Agent to Debtor ("Default Letter 1");

    b. that certain Notice of Default Letter dated July 24, 2009 sent by Agent to Debtor ("Default Letter 2"); and

    c. that certain Notice of Default Letter dated December 28, 2009 sent by Agent to Debtor ("Default Letter 3").

6. Agent and Debtor entered into that certain ISDA Master Service and Credit Agreement Annex dated as of February 21, 2009 (the "SWAP"). Debtor is in default under the SWAP and the SWAP has been terminated as indicated by that certain Default letter dated July 30, 2009, Notice of Payment Default letter dated October 23, 2009, Designation of Early Termination Date letter dated October 28, 2009 and Notice of Amounts Payable letter dated November 2, 2009. Debtor's obligations under the SWAP constitute obligations under the Loan Documents that are secured by the Mortgage.

7. As of December 23, 2009, there is due and owing under the Notes the aggregate principal amount of $22,563,761.42, together with aggregate accrued interest of $933,913.20.

8. As of November 2, 2009, there is due and owing under the SWAP the principal amount of $2,070,943.26 together with accrued interest.

9. As of the date of this Sale Motion, Debtor has not resumed construction and development of the Property.

10. In addition to the defaults under the Loan Documents, approximately 65 mechanics lien claimants have filed mechanics liens against the Property. On October 15, 2009, Heartland Masonry, Inc. filed Case No. 09-CV-09412 in the District Court for Johnson County, Kansas, to foreclose its mechanics lien and named all parties with an interest in the property,

including Debtor, Bank of America and approximately 65 subcontractors (the "Mechanics Lien Lawsuit"). Prior to the Petition Date, Debtor stopped paying contractors for work on the Property, and as a result mechanics liens in the amount of $26,765,580.82 have been filed against the Property under Kansas law (the "Mechanics Liens"). These Mechanics Liens have been the subject of various orders entered by the Bankruptcy Court.

11. On March 8, 2010, the Bankruptcy Court entered an Order styled "Order Establishing Procedures for the Resolution of Mechanics Lien Claims Against Property of the Debtor's Estate" (Docket #109) which set forth the procedure to establish the validity of Mechanics Liens and the priority of the Mechanic's Liens, the Lender's Mortgage and all other claims against Debtor's Property.

12. On December 16, 2010, the Court after conducting a full trial of the issues entered an order making a determination that Lender's Mortgage on the Property has priority over the claims of the Mechanic's Lien. (Docket #487)

13. On December 30, 2010, Brown Commercial Construction Company and other Mechanics Lien claimants filed an appeal of this Court's decision (Docket #491) which is currently pending.

14. Debtor enjoys no equity in the Property.

15. The Debtor with the support of the Lenders implemented a process to sell the Debtor's Property which process consisted of the following steps:

    a.    negotiating, receiving and approving a stalking horse purchase agreement from an interested purchaser;

    b.    retaining CB Richards Ellis, Inc. as the broker for Debtor's Property which has been listed for sale since September 8, 2010 (Docket #390);

  c. implementing the sale process which has been exhaustive and was maintained over a period of ten months; and

  d. it is the Debtor's and Lender's belief that the sale contract received from Aspen Square, Inc. ("Aspen"), a Kansas corporation, represents the highest and best price for Debtor's Property ("Aspen Contract"), and that Aspen is a qualified buyer capable of completing the sale. The Debtor and Lender have agreed to seek approval of the Aspen Contract as a stalking horse offer and to conduct a sale auction pursuant to the bidding procedures set forth herein in an effort to obtain a higher or better offer from third parties. A copy of the Aspen Contract is attached hereto and incorporated herein as **Exhibit A**.

## JURISDICTION AND PROCEDURAL BACKGROUND

16. The Court has jurisdiction over the subject matter of this Sale Motion pursuant to 28 U.S.C. § 1334(b) and 157. This matter is a core proceeding. 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408, 1409.

17. The Debtor files this Sale Motion pursuant to the provisions of Bankruptcy Code §§ 105, 363 and 365 and 1141(c) and Bankruptcy Rules 2002, 6004, 6006 and 9014, and seeks, *inter alia,* entry of an order as follows:

  i. approving the form and manner of notice of this Sale Motion and of the relief requested herein;

  ii. establishing the requirements and bidding procedures for interested persons to submit competing offers for the Property ("Bid Procedures"). A copy of the proposed form of the Bid Procedures is attached hereto and incorporated herein as **Exhibit B**;

  iii. approving the form of the Aspen Contract, including the payment of the break-up fee covering Aspen's documented expenses up to $500,000;

    iv.  scheduling an auction date of August 30, 2011; and

    v.  scheduling a Final Sale Hearing for the first week of September, 2011.

  18.  The parties intend to close the Aspen Contract (or any contract from any other successful bidder) on or before September 30, 2011.

  19.  The sale shall be free and clear of all liens, claims and interests against the Property, except those of record as provided for in the Aspen Contract.

  20.  The Aspen Contract represents a time-sensitive opportunity to realize significant value for the Debtor's Property. Under the circumstances, the Debtor and Lenders have determined that it was essential to file this Sale Motion seeking this Court's approval of the Bid Procedures on an expedited basis to allow the Debtor's Property to be marketed for sale during the next 60 days.

### RELIEF REQUESTED AND BASIS THEREFOR

**A. Sale to Aspen**

  21.  Although the Debtor has explored many options for the reorganization of its business, the Debtor now believes that the best way to maximum value for its assets is by selling the Debtor's Property to a third party.

  22.  In that regard, the Debtor has participated in extensive negotiations with various parties and has concluded that the Aspen Contract is the highest and best offer for its Property and that the Aspen Contract represents an extensive, vigorous, arms-length negotiation between Debtor and Aspen. The major provisions of the Aspen Contract are as follows:

- Buyer: Aspen Square, Inc., a Kansas corporation
- Seller: Corbin Park, LP, Debtor-in-Possession
- Purchase Price: $14,000,000

- Earnest Money Deposit: $1,000,000. Deposit refundable until expiration of the Due Diligence Period, which will be on August 16, 2011. Thereafter, Deposit non-refundable unless Seller defaults, bankruptcy court approval is not obtained, or Buyer cannot obtain approval from the City to transfer the Transportation Development District ("TDD") rights.

- Allocation of Purchase Price: $2,450,000-- real property and improvements; $50,000-- personal property, contracts and warranties; and $11,500,000-- TDD rights

- Contingency Expiration Date (Due Diligence Period): August 16, 2011

- Closing Date: The later of 30 days after the Contingency Expiration Date or 10 days after final bankruptcy court approval

- Property is being purchased "AS IS AND WITH ALL FAULTS". Buyer releases Seller and Bank from all claims related to the Property

- Customary pro-rations for taxes, utilities and closing costs.

### HEARING DATES AND PROVISIONS FOR NOTICE

23. The Debtor and Lenders request that, on an expedited basis, the Court conduct an immediate hearing on this Sale Motion in order to authorize and approve (i) the Aspen Contract, (ii) the procedures set forth in this Motion including the Bidding Procedures, and (iii) the payment of the Break-up Fee described in the Aspen Contract. The Debtor and Lenders request that this hearing be scheduled for July 21, 2011, or a date as soon as the Court's calendar permits.

24. The Debtor and Lenders further state that the Bankruptcy Court will need to set a final hearing (the "Final Sale Approval Hearing") to approve the sale of the Debtor's Property to the entity that submits the highest and best offer as determined by the Bid Procedures described below. The Debtor requests that the Final Sale Approval Hearing be scheduled for the first week of September, 2011, as the Closing of the Aspen Contract is to be accomplished on or before September 30, 2011.

25. Upon entry of the Bid Procedures, the Debtor will serve by first-class mail, postage prepaid, the Bid Procedures on all persons and entities identified on the Debtor's matrix filed with the Court. It is also anticipated that the Debtor's Broker will continue his marketing of the Property and assist any and all interested purchasers/bidders of the Debtor's Property to obtain a higher and better offer.

## APPROVAL OF BIDDING PROCEDURES AND BREAK-UP FEE

26. By this Motion, the Debtor and Lenders propose the Bid Procedures (the "Bid Procedures") that it believes will result in the highest possible price for the Debtor's Property. Pursuant to the proposed Bid Procedures, the Aspen Contract constitutes the opening offer at an auction of the Debtor's Property ("Lead Bid"). The next bid must provide for a cash purchase price exceeding the Lead Bid by a cash amount equal to at least the sum of $1,250,000.00 ("Initial Overbid"), with subsequent overbids being in increments not less than $250,000.00.

27. The proposed Bid Procedures, subject to this Court's approval and the entry of an Order approving the same, are as follows:

   a. ***Solicitation.*** Debtor shall continue to seek offers for the Debtor's Property from potential bidders, including potential bidders who have made previous contacts with Debtor and any other potential purchasers who expresses an interest in purchasing the Debtor's Property after the entry of an Order approving the Bid Procedures.

   b. ***Debtor's Broker.*** Debtor shall continue to have its Broker market the Debtor's Property up to the Bid Date ("Bid Period"). The Debtor's Broker shall solicit offers for the Debtor's Property during the Bid Period. The Debtor's Broker shall also conduct a market analysis to identify any and all parties who may have an interest in purchasing the Debtor's Property and contact those parties and assist the Debtor with all due diligence requests from potential bidders.

   c. ***Information to Potential Bidders.*** Debtor and the Debtor's Broker will coordinate and provide the necessary information for due diligence to any potential bidder. In addition to participating in negotiations or discussions with potential bidders, Debtor and Debtor's Broker shall furnish to such potential bidders certain non-public information so long as such potential

bidders: (i) execute and deliver to Debtor a confidentiality agreement in a form and substance acceptable to Debtor and Lenders, (ii) execute and deliver to Debtor information, which in Debtor's and Lenders' view, demonstrates the financial capability of such entity to consummate the purchase of the Debtor's Property within the time frame set out in the Aspen Contract, and (iii) deliver to Debtor a fully refundable deposit of $250,000.00 prior to receiving any non-public information regarding the Debtor's Property ("Due Diligence Deposit"). In addition to the above, Debtor and/or Debtor's Broker will make available to all such parties a copy of the Aspen Contract and all attachments, exhibits and schedules thereto.

d. *Overbids.* Debtor and Debtor's real estate broker shall solicit overbids in accordance with the following procedure:

   i. *Overbid Deadline.* All bids shall be submitted in writing and must be received by Debtor, through its counsel of record, no later than 4:00 p.m. (C.S.T.) on August 25, 2011 (the "Bid Date") at the following address:

   Jeffrey A. Deines
   **LENTZ, CLARK, DEINES P.A.**
   9260 Glenwood
   Overland Park, Kansas 66212
   (913) 648-0660
   (913) 648-0664 (facsimile)
   jdeines@lcdlaw.com

   with copy to

   **LEWIS, RICE AND FINGERSH, LC**
   ATTN: Joseph J. Trad, Esq.
   600 Washington Avenue, Suite 2500
   St. Louis, Missouri 63101
   (314) 444-7691
   (314) 612-7691 (facsimile)
   jtrad@lewisrice.com

   ii. *Overbid Requirements.* To be considered by Debtor, all overbids must satisfy the following minimum requirements (such bid, a "Qualified Bid"):

   (1) The Initial Qualified Bid must provide for a cash purchase price equal to the Purchase Price in the Aspen Contract plus the Initial Overbid, with subsequent overbids being in increments not less than $250,000 and be on terms and

conditions that Debtor and the Lenders believe are substantially the same as, or superior to, those set forth in the Aspen Contract;

(2) All Qualified Bids must be accompanied by a deposit equal to $1 million which may consist of a Deposit of $750,000.00 plus the Due Diligence Deposit of $250,000.00 for a total of $1 million (the "Deposit") in the form of either (i) a cash deposit to be held by Debtor or (ii) an irrevocable standby letter of credit listing Debtor as the beneficiary, provided any such standby letter of credit must be issued by a federally insured national banking association and be in a form and substance acceptable to Debtor and Lenders. The Deposit shall be forfeitable to Debtor in the event the Successful Bidder (as defined herein) fails to close by the Closing Deadline (as defined herein). Such Deposits shall be refunded only as detailed below;

(3) Such overbid must provide for the purchase of all or substantially all of the Debtor's Property as set forth in the Aspen Contract;

(4) Such overbid must be accompanied by evidence satisfactory to Debtor and Lenders demonstrating that the bidder has the financial ability to close and consummate the purchase of the Debtor's Property no later than 5:00 p.m. (C.S.T.), September 30, 2011 (the "Closing Deadline");

(5) In connection with such overbid, the bidder must execute and deliver to Debtor a purchase agreement in a form that is, in Debtor's view, substantially the same as, or superior to Debtor, the terms set forth in the Aspen Contract and such bidder must submit a red-line version of its contract compared to the Aspen Contract showing all changes it has made to the Aspen Contract;

(6) Such overbid shall remain open and irrevocable through the date following entry of the Final Sale Approval Hearing.

iii. *Auction Process and Selection of Successful Bidder.* In the event Qualified Bids have been received by the Bid Date, an auction ("Auction") will be held at 2:00 p.m. (C.S.T.) on August 30, 2011 (the "Auction Date"). The Auction will be conducted at the offices of Lentz, Clark, Deines P.A., 9260 Glenwood, Overland Park, Kansas 66212. Only Aspen and Qualified Bidders who have complied with the Bid Procedures may participate in the Auction.

iv. **Bid Increments.** The initial bid increment shall be not less than the highest Qualified Bid received prior to the Auction Date. Any subsequent overbid shall be in increments not less than $250,000. Upon completion of the Auction, Debtor and Lenders shall select the bid that, in their reasonable judgment, represents the highest and best offer and is in the best interests of Debtor and its estate (the "Successful Bidder"). Debtor shall then present the bid of the Successful Bidder (the "Successful Bid") at the Final Sale Approval Hearing and seek Bankruptcy Court approval of the sale of the Debtor to the Successful Bidder.

v. **Approval of Successful Bidder.** At the Final Sale Approval Hearing, Debtor shall inform the Court of the Successful Bid and seek authority to sell the Debtor's Property to the Successful Bidder.

vi. **Return of Deposit.** Within thirty (30) business days after the Final Sale Approval Hearing, all Deposits, without interest, shall be returned to any bidder whose bid was not the Successful Bid. The Deposit submitted by the Successful Bidder shall be applied against the payment of the purchase price for the Successful Bid at the closing of the sale to the Successful Bidder.

vii. **Alternative Successful Bidder.** In the event the Successful Bidder does not close, Debtor may close with any other bidder (the "Alternative Successful Bidder") who, in Debtor's and Lender's reasonable judgment, represents the next highest and best offer for the Debtor's Property, provided such bidder agrees at the Auction to remain as an Alternative Successful Bidder and further provided that such Alternative Successful Bidder is approved by the Bankruptcy Court at the Final Sale Approval Hearing.

viii. **Right to Reject Bids.** Debtor with Lender's consent may, at any time before entry of an order approving a Successful Bid, reject any bid.

ix. **Failure of Successful Bidder to Close.** In the event the Successful Bidder does not close on or before the Closing Deadline, Debtor may close with the Alternative Successful Bidder, if any, and the Deposit of the Successful Bidder shall be forfeited to Debtor or Debtor may draw down on the letter of credit, as the case may be, provided that the failure of the Successful Bidder to close on or before the Closing Deadline was not a result of Debtor's default or breach of the Agreement. If the failure of the Successful Bidder to close on or before the Closing Deadline was a result of Debtor's default or breach of the Aspen Contract or similar contract, the

>> Deposit of the Successful Bidder shall be refunded or the letter of credit will be terminated, as the case may be.
>
> x. **Break Up Fee.** If the Bankruptcy Court approves any bid at the Final Sale Approval Hearing other than Aspen's bid, and provided that such bid is a Qualified Bid and the applicable requirements of the Aspen Contract are otherwise satisfied, then Debtor shall pay to Aspen the Break-Up Fee based on documented expenses contemplated under the Aspen Contract at the Closing Deadline of the sale of Debtor's Property.

## BRIEF IN SUPPORT

### A. Break-Up Fee.

28. In order to fairly protect Aspen for the significant time, expense, and risks taken in pursuit of the transactions evidenced by the Aspen Contract, the Debtor and the Aspen have negotiated the payment to Aspen by the Debtor, subject to certain limitations, a break-up fee in the event the Property is sold to a third-party purchaser other than the Aspen provided that Aspen is not in breach of the Aspen Contract.

29. Subject to certain exceptions set forth in the Aspen Contract, the Debtor has agreed that in the event that the Aspen is not the Successful Bidder in purchasing the Debtor's Property, the Debtor will pay to the Aspen the Break-Up Fee based on documented costs and expenses, which shall not exceed $500,000.00. The Break-Up Fee shall be an allowed administrative claim under Bankruptcy Section 503, and subject to certain exceptions set forth in the Aspen Contract, and shall be paid by Debtor on the Closing Deadline with the Successful Bidder.

30. The purpose of the Break-Up Fee is twofold: (a) to reimburse Aspen for the expenses it has incurred and will incur in connection with the proposed Aspen Contract; and (b) to compensate the Aspen for the time and effort it has expended or will expend as a "stalking horse" for competing bids. Based on the expected value and the benefit associated with

obtaining a committed purchaser, the Break-Up Fee is fair and reasonable under the circumstances.

31. The Debtor requests that the Bid Procedures approved by the Court also approve the payment of the Break-Up Fee as set forth in the Aspen Contract.

32. The Bid Procedures requested herein should be approved because they (i) are the product of the Debtor's sound business judgment; (ii) are in the best interests of Debtor's estate and all other interested parties; (iii) will maximize the value of the Debtor's Property; and (iv) will enhance the bidding process.

**B.  Best Interests of Debtors, Creditors and Estates.**

33. The Debtor submits that the Aspen Contract represents an advantageous and time-sensitive opportunity to realize the highest possible value for the Debtor's Property. The Debtor further submits that the proposed hearing dates and the Bid Procedures are fair, reasonable, and effective to afford all creditors, equity security holders, and interested parties and persons with appropriate notice and opportunity for hearing under the circumstances and to provide a full and fair opportunity for any willing buyer to submit a higher and better offer than that presently reflected by the Aspen Contract.

34. For all of the foregoing reasons, the Debtor asserts that the sale of the Debtor's Property is imperative and is in the best interests of the Debtor and its estate. Such a sale will maximize and realize the highest and best value that can be obtained for the Debtor's Property in furtherance of the sale process undertaken by the Debtor in this Chapter 11 case.

## PRAYER

**WHEREFORE,** the Debtor and Lenders respectfully request that the relief requested in this Sale Motion be granted and that at the conclusion of the hearing on this Sale Motion, the Court enter the Bid Procedures in the form attached hereto as **Exhibit B**:

- (a) setting a deadline for parties to object to any of the relief requested in the Sale Motion;

- (b) approving the Bid Procedures regarding the requirements and procedures for interested persons to submit competing offers for the Debtor's Property;

- (c) approving the payment of the Break-Up Fee;

- (d) setting an Auction Date of August 30, 2011;

- (e) setting a date for the Final Sale Approval Hearing to be conducted in the first week of September, 2011; and

- (f) for such further and other relief as the Court deems just and appropriate.

*[signature page next page]*

Respectfully submitted,

Dated: July **6**, 2011  **LENTZ, CLARK, DEINES P.A.**

By: /s/ Jeffrey A. Deines
Jeffrey A. Deines
9260 Glenwood
Overland Park, Kansas 66212
(913) 648-0660
(913) 648-0664 (facsimile)
jdeines@lcdlaw.com

*COUNSEL TO CORBIN PARK, L.P./ DEBTOR*


**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Scott A. Wissel
Scott A. Wissel, Esq., KS Bar No. 18589
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816-421-2500
Facsimile: 816-472-2500
E-Mail: sawissel@lrf-kc.com

And

**LEWIS, RICE & FINGERSH, L.C.**

Joseph J. Trad
Larry E. Parres
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: 314-444-7600
Facsimile: 314-612-7691
E-Mail: jtrad@lewisrice.com

*COUNSEL TO BANK OF AMERICA, N.A./AGENT*

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing was served on the parties receiving electronic notices in the above-captioned proceedings through the Court's CM/ECF System, and was served by electronic mail on the following parties, this **6** day of July 2011:

/s/ Jeffrey A. Deines