UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-20014 |
| CORBIN PARK, L.P., ) | Chapter 11 |
| ) | Hearing Date: September 29, 2011 |
| Debtor. ) | Hearing Time: 10:00 |

**SECOND JOINT MOTION OF DEBTOR AND BANK OF AMERICA FOR (I) APPROVAL OF (a) FORM OF PURCHASE AGREEMENT; (b) BID PROCEDURES, AND (c) FORM AND MANNER OF NOTICE, AND (II) SCHEDULE OF AUCTION DATE**

COMES NOW Corbin Park, L.P. and Bank of America, N.A., as administrative agent (the "Agent") for Bank of America, N.A., U.S. Bank N.A., TierOne Bank, Regions Bank, and Compass Bank (collectively, the "Lenders") and for its Second Joint Motion for (I) Approval of (a) Form of Purchase Agreement, (b) Bid Procedures, and (c) Form and Manner of Notice, and (II) Schedule of Auction Date ("Second Sale Motion"), respectfully states as follows:

**BACKGROUND**

1. On January 5, 2010 (the "Petition Date"), Corbin Park, L.P., a Delaware limited liability partnership (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. Debtor is the owner of an approximately 97 acre real estate project located at 135th Street and Metcalf Avenue in Overland Park, Kansas known as "Corbin Park" (the "Property"). From October, 2008, Debtor has taken steps to develop Corbin Park as a one and two-story regional shopping center anchored by, among other stores, Von Maur, and JC Penney.

3. In order to develop Corbin Park, Debtor and Agent, as administrative agent and a lender, together with the other Lenders, entered into the following agreements (collectively, together with all other agreements executed in conjunction therewith, the "Loan Documents",

copies of which were attached to Agent's Emergency Motion for Relief from Stay filed with the Court on January 13, 2010 [Docket #17]):

  a. Construction Loan Agreement dated as of October 7, 2008, as amended by that certain First Amendment to Construction Loan Agreement dated as of January 5, 2009, and by that certain Second Amendment to Construction Loan Agreement dated as of April 7, 2009 (collectively, the "Loan Agreement");

  b. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Bank of America, N.A. (the "Bank of America Note");

  c. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of U.S. Bank National Association (the "U.S. Bank Note");

  d. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of TierOne Bank (the "TierOne Note");

  e. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Regions Bank (the "Regions Note"); and

  f. Promissory Note dated October 7, 2008 executed by Debtor payable to the order of Compass Bank (the "Compass Note"). (The Bank of America Note, the U.S. Bank Note, the TierOne Note, the Compass Note, and the Regions Note are collectively referred to herein as the "Notes").

4. To secure Debtor's obligations under the Notes and the Loan Agreement, Debtor executed and delivered to Agent the following agreements:

  a. Future Advance Mortgage, Assignment of Rents and Leases and Security Agreement dated October 7, 2008 in the principal amount of One Hundred Seven Million Four Hundred Thousand and 00/100s Dollars ($107,400,000.00) (the "Mortgage"), granting Bank of America, as administrative agent, a first mortgage in the property comprising Corbin Park, as more particularly described in the Mortgage;

  b. Collateral Assignment of Development Agreement and Related Rights dated October 7, 2008;

  c. Assignment of Management and Leasing Contracts and Subordination of Fees dated October 7, 2008; and

  d. Assignment of Construction Agreement dated October 7, 2008.

5. Debtor is in default under the Notes, the Loan Agreement and Mortgage as evidenced by:

   a. that certain Notice of Default Letter dated July 21, 2009 sent by Agent to Debtor ("Default Letter 1");

   b. that certain Notice of Default Letter dated July 24, 2009 sent by Agent to Debtor ("Default Letter 2"); and

   c. that certain Notice of Default Letter dated December 28, 2009 sent by Agent to Debtor ("Default Letter 3").

6. Agent and Debtor entered into that certain ISDA Master Service and Credit Agreement Annex dated as of February 21, 2009 (the "SWAP"). Debtor is in default under the SWAP and the SWAP has been terminated as indicated by that certain Default letter dated July 30, 2009, Notice of Payment Default letter dated October 23, 2009, Designation of Early Termination Date letter dated October 28, 2009 and Notice of Amounts Payable letter dated November 2, 2009. Debtor's obligations under the SWAP constitute obligations under the Loan Documents that are secured by the Mortgage.

7. As of December 23, 2009, there is due and owing under the Notes the aggregate principal amount of $22,563,761.42, together with aggregate accrued interest of $933,913.20.

8. As of November 2, 2009, there is due and owing under the SWAP the principal amount of $2,070,943.26 together with accrued interest.

9. As of the date of this Second Sale Motion, Debtor has not resumed construction and development of the Property.

10. In addition to the defaults under the Loan Documents, approximately 65 mechanics lien claimants have filed mechanics liens against the Property. On October 15, 2009, Heartland Masonry, Inc. filed Case No. 09-CV-09412 in the District Court for Johnson County, Kansas, to foreclose its mechanics lien and named all parties with an interest in the property,

including Debtor, Bank of America and approximately 65 subcontractors (the "Mechanics Lien Lawsuit"). Prior to the Petition Date, Debtor stopped paying contractors for work on the Property, and as a result mechanics liens in the amount of $26,765,580.82 have been filed against the Property under Kansas law (the "Mechanics Liens"). These Mechanics Liens have been the subject of various orders entered by the Bankruptcy Court.

11. On March 8, 2010, the Bankruptcy Court entered an Order styled "Order Establishing Procedures for the Resolution of Mechanics Lien Claims Against Property of the Debtor's Estate" (Docket #109) which set forth the procedure to establish the validity of Mechanics Liens and the priority of the Mechanic's Liens, the Lender's Mortgage and all other claims against Debtor's Property.

12. On December 16, 2010, the Court after conducting a full trial of the issues entered an order making a determination that Lender's Mortgage on the Property has priority over the claims of the Mechanic's Lien. (Docket #487)

13. On December 30, 2010, Brown Commercial Construction Company and other Mechanics Lien claimants filed an appeal of this Court's decision (Docket #491) which is currently pending.

14. Debtor enjoys no equity in the Property.

15. The Debtor with the support of the Lenders implemented a process to sell the Debtor's Property which process consisted of the following steps:

    a. retaining CB Richards Ellis, Inc. as the broker for Debtor's Property which has been listed for sale since September 8, 2010 (Docket #390); and

    b. implementing the sale process which has been exhaustive and was maintained over a period of twelve months.

16. As a result of the sale process, a sale contract was received from Aspen Square, Inc. ("Aspen"), a Kansas corporation, which, at the time represented the highest and best price for Debtor's Property ("Aspen Contract").

17. On July 6, 2011, the Debtor and Lenders filed their Joint Motion for (I) Approval of (a) Form of Purchase Agreement, (b) Bid Procedures, and (c) Form and Manner of Notice, and (II) Schedule of Auction Date seeking approval of the Aspen Contract as a stalking horse offer and to conduct a sale auction pursuant to the bidding procedures set forth herein in an effort to obtain a higher or better offer from third parties. (Docket #545)

18. On July 25, 2011, this Court entered its order approving the initial Joint Motion. (Docket #561).

19. However, on August 10, 2011, Aspen notified the Debtor and Lenders that it was terminating the Aspen Contract. As a result, there was no stalking horse bid.

20. Further, Aspen reported the termination of the Aspen Contract to the press and it was reported publicly in the Kansas City Star. This resulted in confusion with respect to potential competitive bidders concerning their bid requirements.

21. While the Movants received conditional offers of interest, no one submitted a competing offer with terms resembling the Aspen Contract. Moreover, the conditional offers of interest which Movants received were generally non-conditional offers which the buyers, agreeing to forego due diligence and other custom, conditions to sale.

22. Consequently, it has become clear to the Debtor and Lenders that it is not feasible to undertake a traditional real estate sale process providing a potential buyer with significant due diligence periods to obtain approvals from the City of Overland Park and modifications in the

various agreements with Van Maur, JC Penney and other affected parties as preconditions to the consummation of a sale.

23. It is, therefore, the business judgment of Debtors, with the concurrence of the Lenders, that the Property, including the Debtor's rights in the TDD, should be sold pursuant to a non-contingent contract, ("Non-Contingent Sale Contract"), other than approval of the court, which is attached hereto and incorporated herein as **Exhibit A**.

### JURISDICTION AND PROCEDURAL BACKGROUND

24. The Court has jurisdiction over the subject matter of this Second Sale Motion pursuant to 28 U.S.C. § 1334(b) and 157. This matter is a core proceeding. 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408, 1409.

25. The Debtor files this Second Sale Motion pursuant to the provisions of Bankruptcy Code §§ 105, 363 and 365 and 1141(c) and Bankruptcy Rules 2002, 6004, 6006 and 9014, and seeks, *inter alia,* entry of an order as follows:

   i. approving the form and manner of notice of this Second Sale Motion and of the relief requested herein;

   ii. establishing the requirements and bidding procedures for interested persons to submit competing offers for the Property ("Second Set of Bid Procedures"). A copy of the proposed form of the Second Set of Bid Procedures is attached hereto and incorporated herein as **Exhibit B**;

   iii. approving the form of the Non-Contingent Sale Contract;

   iv. setting October 19, 2011 as the last day for all parties to submit an offer on the Non-Contingent Sale Contract along with a red-line version showing all changes to the Non-Contingent Sale Contract and posting a $500,000.00 refundable deposit with the Title Company;

   v. scheduling an auction commencement date of Monday, October 24, 2011, at which time a sale contract will be entered into with the successful bidder; and

vi.  scheduling a Final Sale Hearing for immediately after the auction.

26. The parties intend to close the Non-Contingent Sale Contract to the highest and best bidder at the Auction within 2 (two) business days after the entry of a final order approving the sale.

27. The sale shall be free and clear of all liens, claims and interests against the Property, except those of record as provided for in the Non-Contingent Sale Contract.

28. Under the circumstances, the Debtor and Lenders have determined that it was essential to file this Second Sale Motion seeking this Court's approval of the Second Set of Bid Procedures on an expedited basis to allow the Debtor's Property to be marketed for sale during the next 30 days.

## RELIEF REQUESTED AND BASIS THEREFOR

29. Although the Debtor has explored many options for the reorganization of its business, the Debtor now believes that the best way to maximum value for its assets is by selling the Debtor's Property to a third party through an auction. In that regard, the Debtor has participated in extensive negotiations with various parties and has concluded that an auction sale will result in a vigorous and arms-length sale of the Property.

## HEARING DATES AND PROVISIONS FOR NOTICE

30. The Debtor and Lenders request that, on an expedited basis, the Court conduct an immediate hearing on this Second Sale Motion in order to authorize and approve (i) the form of the Non-Contingent Sale Contract, and (ii) the procedures set forth in this Motion including the Second Set of Bidding Procedures. The Court has scheduled a hearing on September 29, 2011, at 10:00 a.m. (C.S.T.).

31. The Debtor and Lenders further state that the Bankruptcy Court will need to set a final hearing (the "Final Sale Approval Hearing") to approve the sale of the Debtor's Property to

the entity that submits the highest and best offer as determined by the Second Set of Bid Procedures described below. The Court has set a sale confirmation hearing on October 25, 2011, at 1:30 p.m.

32. Upon entry of the Second Set of Bid Procedures, the Debtor will serve by first-class mail, postage prepaid, the Second Set of Bid Procedures on all persons and entities identified on the Debtor's matrix filed with the Court. It is also anticipated that the Debtor's Broker will continue his marketing of the Property and assist any and all interested purchasers/bidders of the Debtor's Property to obtain a higher and better offer.

## APPROVAL OF BIDDING PROCEDURES

33. By this Motion, the Debtor and Lenders propose the Second Set of Bid Procedures that it believes will result in the highest possible price for the Debtor's Property. Pursuant to the proposed Second Set of Bid Procedures, the opening offer at an auction must equal or exceed $5,000,0000.00 ("Lead Bid"). The next bid must provide for a cash purchase price exceeding the Lead Bid by a cash amount equal to at least the sum of $500,000.00 ("Initial Overbid"), with subsequent overbids being in increments not less than $500,000.00.

34. The proposed Second Set of Bid Procedures, subject to this Court's approval and the entry of an Order approving the same, are as follows:

> b. ***Solicitation.*** Debtor shall continue to seek offers for the Debtor's Property from potential bidders, including potential bidders who have made previous contacts with Debtor, and any other potential purchasers who express an interest in purchasing the Debtor's Property after the entry of an Order approving these Second Set of Bid Procedures.
>
> c. ***Debtor's Broker.*** Debtor shall continue to have its Broker market the Debtor's Property up to the Auction Date. The Debtor's Broker shall also conduct a market analysis to identify any and all parties who may have an interest in purchasing the Debtor's Property and contact those parties and assist the Debtor with all due diligence requests from potential bidders.

8

d.  **Information to Potential Bidders.** Debtor and the Debtor's Broker will coordinate and make all available information for due diligence available to any potential bidder on the Debtor's Broker's secured website. In addition to participating in negotiations or discussions with potential bidders, Debtor and Debtor's Broker shall furnish to such potential bidders certain non-public information so long as such potential bidders: (i) execute and deliver to Debtor a confidentiality agreement in a form and substance acceptable to Debtor and Lenders and (ii) execute and deliver to Debtor information, which in Debtor's and Lenders' view, demonstrates the financial capability of such entity to consummate the purchase of the Debtor's Property. In addition to the above, Debtor and/or Debtor's Broker will make available to all such parties a copy of the Non-Contingent Contract and all attachments, exhibits and schedules thereto.

e.  **Submission of Non-Contingent Contract.** All interested bidders must submit the Non-Contingent Contract or another contract acceptable to Debtor and Lenders, along with a red-line version showing all differences and changes from the Non-Contingent Contract along with a refundable deposit of $500,000.00 to First American Title Insurance Company, 911 Main, Suite 2500, Kansas City, Missouri 64105 (Todd G. Jones, 816-421-7905) ("Title Company") on or before October 19, 2011 at 4:00 p.m. (C.S.T.).

f.  **Auction Process and Selection of Successful Bidder.** An auction ("Auction") of the Debtor's property will commence at 9:00 a.m. (C.S.T.) on Monday, October 24, 2011 (the "Auction Date"). The Auction will be conducted at the offices of Lentz**,** Clark**,** Deines P.A.**,** 9260 Glenwood, Overland Park, Kansas 66212.

g.  **Bid and Bid Increments.** The initial bid must be equal to or greater than $5,000,000 and on the Non-Contingent Contract or another contract acceptable to Debtor and the Lenders. The Debtor, with consultation of the Lenders, will choose which bid is the highest and best bid to become the initial bid at the auction. All further bid increments shall be in increments not less than $500,000. Upon completion of the Auction, Debtor, in consultation with the Lenders, and the Lenders shall select the bid that, in their reasonable judgment, represents the highest and best offer and is in the best interests of Debtor and its estate (the "Successful Bidder"). Debtor shall then present the bid of the Successful Bidder (the "Successful Bid") at the Final Sale Approval Hearing and seek Bankruptcy Court approval of the sale of the Debtor to the Successful Bidder.

h.  **Approval of Successful Bidder.** At the Final Sale Approval Hearing, Debtor shall inform the Court of the Successful Bid and seek authority to sell the Debtor's Property to the Successful Bidder.

i. ***Alternative Successful Bidder.*** In the event the Successful Bidder does not close, Debtor may close with any other bidder (the "Alternative Successful Bidder") who, in Debtor's and Lenders' reasonable judgment, represents the next highest and best offer for the Debtor's Property, provided such bidder agrees at the Auction to remain as an Alternative Successful Bidder and further provided that such Alternative Successful Bidder is approved by the Bankruptcy Court at the Final Sale Approval Hearing.

j. ***Earnest Money Deposit.*** In order to qualify as a bidder at the auction, each bidder will have to deposit $500,000.00 with the Title Company at the time their Non-Contingent Sale Contract is submitted to Debtor which shall be done no later than 4:00 p.m. (C.S.T.) on October 19, 2011.

k. ***Right to Reject Bids.*** Debtor with the Lenders' consent may, at any time before entry of an order approving a Successful Bid, reject any bid.

l. ***Failure of Successful Bidder to Close.*** In the event the Successful Bidder does not close on or before the Closing Deadline, Debtor may close with the Alternative Successful Bidder, if any, and the Deposit of the Successful Bidder shall be forfeited to Debtor and paid over to Lender, provided that the failure of the Successful Bidder to close on or before the Closing Deadline was not a result of Debtor's default or breach of the Agreement. If the failure of the Successful Bidder to close on or before the Closing Deadline was a result of Debtor's default or breach of the Non-Contingent Contract or similar contract, the Deposit of the Successful Bidder shall be refunded.

**BRIEF IN SUPPORT**

**A.  Best Interests of Debtors, Creditors and Estates.**

35. The Debtor submits that the sale process represents an advantageous and time-sensitive opportunity to realize the highest possible value for the Debtor's Property. The Debtor further submits that the proposed hearing dates and the Second Set Bid Procedures are fair, reasonable, and effective to afford all creditors, equity security holders, and interested parties and persons with appropriate notice and opportunity for hearing under the circumstances and to provide a full and fair opportunity for any willing buyer to submit an offer for the Property.

36. For all of the foregoing reasons, the Debtor asserts that the sale of the Debtor's Property is imperative and is in the best interests of the Debtor and its estate. Such a sale will

maximize and realize the highest and best value that can be obtained for the Debtor's Property in furtherance of the sale process undertaken by the Debtor in this Chapter 11 case.

## PRAYER

**WHEREFORE,** the Debtor and Lenders respectfully request that the relief requested in this Second Sale Motion be granted and that at the conclusion of the hearing on this Second Sale Motion, the Court enter the Second Set of Bid Procedures in the form attached hereto as **Exhibit B**:

(a) setting a deadline for parties to object to any of the relief requested in the Second Sale Motion;

(b) approving the Second Set of Bid Procedures regarding the requirements and procedures for interested persons to submit offers for the Debtor's Property;

(c) setting October 19, 2011 at 4:00 p.m. (C.S.T.) as the last day for all parties to submit an offer on the Non-Contingent Sale Contract along with a red-line version showing all changes to the Non-Contingent Sale Contract and posting a $500,000.00 refundable deposit with the Title Company;

(d) setting an Auction Date of Monday, October 24, 2011 at 9:00 a.m. (C.S.T.);

(e) setting a date for the Final Sale Approval Hearing to be conducted on October 25, 2011, at 1:30 p.m.; and

(f) for such further and other relief as the Court deems just and appropriate.

[*signature page next page*]

Respectfully submitted,

Dated: September 9, 2011 **LENTZ CLARK DEINES PA**

By: /s/ Jeffrey A. Deines
Jeffrey A. Deines
9260 Glenwood
Overland Park, Kansas 66212
(913) 648-0660
(913) 648-0664 (facsimile)
jdeines@lcdlaw.com

*COUNSEL TO CORBIN PARK, L.P./ DEBTOR*

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Scott A. Wissel
Scott A. Wissel, Esq., KS Bar No. 18589
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816-421-2500
Facsimile: 816-472-2500
E-Mail: sawissel@lrf-kc.com

And

**LEWIS, RICE & FINGERSH, L.C.**

Joseph J. Trad
Larry E. Parres
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: 314-444-7600
Facsimile: 314-612-7691
E-Mail: jtrad@lewisrice.com

*COUNSEL TO BANK OF AMERICA, N.A./AGENT*

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the foregoing was served on the parties receiving electronic notices in the above-captioned proceedings through the Court's CM/ECF System, and was served by electronic mail on the following parties, this 9th day of September 2011:

/s/ Jeffrey A. Deines